IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KRISTINE M. BRUN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:13CV110 |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | MEMORANDUM AND ORDER |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Kristine M. Brun claims in this Social Security appeal that the Commissioner's decision to deny her Social Security benefits is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

## BACKGROUND

In October, 2009, Plaintiff filed an application for disability benefits under Title II of the Social Security Act (the "Act"), alleging that since December 15, 2008,[1] she has been unable to engage in any type of substantial and gainful work activity due to fibromyalgia, degenerative disc disease, depression, allergies, acid reflux and sleep apnea. (Tr. 155.) Plaintiff's application was denied initially (Tr. 74, 78-81) and on reconsideration. (Tr. 76, 86-93.) Subsequently, she appealed the denial to an administrative law judge ("ALJ").

Following an administrative hearing, the ALJ issued an unfavorable decision on October 20, 2011, concluding that Plaintiff is not "disabled" within the meaning of the Act. (Tr. 12-24.) In her decision, the ALJ evaluated Plaintiff's disability claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[2]  *See* 20 C.F.R.

---

[1] Plaintiff later amended her alleged onset date to June 3, 2010.  (Tr. 71-72.)

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

§§ 404.1520 and 416.920. In doing so, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, bilateral degenerative joint disease of the knees, degenerative disc disease, allergies, obstructive sleep apnea, asthma, obesity, major depressive disorder and alcohol dependence. (Tr. 14.) The ALJ then formulated Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that the claimant retains the ability to stand or walk for 2 hours in an 8-hour day, sit with normal breaks for 6 hours, and perform occasional postural activities such as climb, balance and stoop. The claimant should seldom kneel, crawl or be on her knees. The claimant should avoid concentrated exposure to fumes and to hazards and not work on ladders, ropes and scaffolds. The claimant retains the ability to perform unskilled work that is routine, repetitive and does not require extended concentration, with a specific vocational preparation skill level of 1 or 2. Finally, the claimant should avoid intense or constant social interactions but

---

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

[3] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

2

could handle occasional or brief, superficial social interaction.

(Tr. 17.) The ALJ determined that, given Plaintiff's RFC, she was unable to perform her past relevant work as a cashier-checker, bagger, cashier II, deli worker, stocking and assembler of small products. (Tr. 23.) However, the ALJ found that there was other work Plaintiff could perform, such as inspector packager, final assembler, and inspector tester. (Tr. 23-24). Therefore, the ALJ determined that Plaintiff was not entitled to benefits. (Tr. 24.)

Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration. On February 4, 2013, after considering additional evidence submitted by Plaintiff, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001) (quotation and citation omitted). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61 (quotation and citation omitted). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence exists for a contrary outcome. *Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

Plaintiff makes two arguments on appeal. First, Plaintiff maintains that the ALJ's finding that she did not have any significant limitations in her ability to sit for prolonged periods of time is not supported by the evidence. Second, Plaintiff claims that the ALJ failed to properly evaluate Plaintiff's credibility in reaching her decision. For the reasons explained below, the Court finds each of Plaintiff's arguments unpersuasive.

### I.   Assessment of Plaintiff's RFC

Plaintiff maintains that the ALJ inaccurately assessed her RFC by failing to include significant limitations on her ability to sit. Plaintiff claims that there is no evidence from a

3

treating provider that indicates that Plaintiff can sit for an extended period of time and that all of the medical evidence indicates that Plaintiff has significant limitations in her ability to sit. Simply put, Plaintiff argues that the ALJ failed to evaluate Plaintiff's claim based on the substantial evidence of record.

The medical evidence shows that in September, 2009, Plaintiff was evaluated by Dr. James Devney for complaints of lower back pain. (Tr. 295.) Upon examination, Dr. Devney observed that Plaintiff appeared comfortable and transitioned without grimace or hesitation. (Tr. 294.) There was no muscle spasm or atrophy, and her lower extremity motor function was normal. (*Id*.) Plaintiff could toe and heel walk bilaterally and perform a deep knee bend without difficulty. (*Id*.) An MRI of Plaintiff's lumbar spine revealed diffuse bulging of the annulus and narrowing of the intervertebral foramina. (Tr. 295-96, 260.) Therefore, Dr. Devney administered a steroid injection to Plaintiff's lower back. (Tr. 292.)

Plaintiff returned to Dr. Devney one week later and reported that she was still experiencing pain, but Plaintiff's physical examination was unchanged from her previous visit. (Tr. 298.) Dr. Devney noted that Plaintiff appeared comfortable and in no apparent distress. (*Id*.) Because the steroid injection did not seem to be effective, Dr. Devney recommended physical therapy and weight loss. (*Id*.) Plaintiff underwent a physical therapy evaluation a few days later. The physical therapist observed that Plaintiff had a normal gait, but had difficulty transitioning between sitting and supine positions. (Tr. 314.) Over the next four weeks, Plaintiff participated in twelve physical therapy sessions. (Tr. 312.)

On November 4, 2009, Plaintiff was evaluated by Dr. H. Randall Woodward for possible surgery. (Tr. 319-21.) Dr. Woodward concluded that Plaintiff had degenerative lumbar disc disease and bilateral foraminal stenosis. Dr. Woodward also noted that Plaintiff had fibromyalgia. (Tr. 320.) However, after completing his examination of Plaintiff and reviewing her medical records, he told Plaintiff that her symptoms seemed a bit out of proportion. (Tr. 321.) He told Plaintiff to lose weight and to contact the office once she had completed some anti-inflammatory medications. (*Id*.)

In January, 2010, Joseph Stankus, Ph.D. performed a psychological consultative examination in connection with Plaintiff's application for disability benefits. (Tr. 356-63.)

4

Dr. Stankus observed that Plaintiff's hair was uncombed and that she walked using a cane. (Tr. 356.) Plaintiff reported she had stopped working in September, 2008 when she was fired from her job because her cash drawer had been incorrect on three different occasions. (Tr. 359.) Dr. Stankus concluded that Plaintiff was likely to have major restrictions in her activities of daily living, especially when depressed. (Tr. 361.) He noted, however, that Plaintiff seemed able to understand, remember and carry out simple instructions and that there did not appear to be any major impediment for her to relate appropriately to co-workers and supervisors. (Tr. 361.) Plaintiff's stream of conversation and contact with reality was within normal limits, and Plaintiff's judgment and insight seemed to be normal. Dr. Stankus diagnosed Plaintiff with a single episode of depression and alcohol dependence. (Tr. 362.) Dr. Stankus found that Plaintiff's prognosis was guarded to fair, but noted that Plaintiff's prognosis might rise to the level of good if she would participate in a program of individual psychotherapy. (Tr. 362.) Plaintiff has not received specialized psychiatric treatment from a psychiatrist or psychologist.

In early February, 2010, an x-ray of Plaintiff's back showed a loss of disc space, spinal central canal stenosis, and bilateral foraminal stenosis. (Tr. 402, 441.) On February 8, 2010, Dr. Woodward performed back surgery, an anterior discectomy and fusion. (Tr. 402, 409.) Plaintiff underwent a session of physical therapy in March, 2010. (Tr. 458.) At her follow-up visit with Dr. Woodward in May, 2010, Plaintiff reported doing much better. (Tr. 465.) Plaintiff's gait, spinal alignment, straight leg raise, range of motion and motor function were normal. (Tr. 465-66.) Plaintiff was able to toe and heel walk bilaterally and do deep knee bends. (Tr. 466.) Plaintiff followed-up with Dr. Woodward in July, 2010. At that time, Plaintiff rated her low back pain as 10 on a 10 point scale. (Tr. 490.) Plaintiff's examination showed intact motor and sensory function. (Tr. 491-92.) Dr. Woodward found that Plaintiff had normal lower extremity motor function, and that she had non-painful full internal and external rotation of both hips. (Tr. 491.) A CT scan showed intact disc space and anterior fusion with anatomic alignment. (Tr. 492-93.) Plaintiff has not followed-up with surgery or physical therapy for her back pain since October of 2010.

In November, 2010, Dr. Thomas J. Connolly evaluated Plaintiff's right knee, and noted crepitus, effusion, and loose bodies. (Tr. 588.) In December, 2010, Dr. Connolly surgically repaired Plaintiff's right knee. (Tr. 586-87.) A follow-up appointment that month

noted that the incision from surgery had healed nicely and that Plaintiff was doing well. At that time, Dr. Connolly advised Plaintiff to work on range of motion and strengthening of the knee, and to lose weight. (Tr. 585.) Plaintiff returned to Dr. Connolly in February, 2011, complaining of hip and knee pain. (Tr. 583.) Upon examination, Dr. Connolly noted that Plaintiff's left knee was stable and that the right knee was excellent, with no pain on range of motion testing. (*Id*.) Dr. Connolly prescribed a home stretching and exercise program. (*Id*.) Plaintiff returned to Dr. Connolly in July, 2011, again complaining of hip and knee pain. (Tr. 580.) Dr. Connolly noted that Plaintiff was in no apparent distress, was able to transfer positions independently, and that Plaintiff's x-rays showed no significant abnormalities. (Tr. 580-82.) Ligamentous stress tests were negative at that time. (*Id*.) Dr. Connolly recommended physical therapy, which Plaintiff declined because of limited insurance benefits. (Tr. 580.)

Having reviewed the matter, the Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole. As will be explained below, the ALJ did not err in finding Plaintiff less than credible. Moreover, the medical evidence does not indicate that Plaintiff's ability to sit for lengthy periods of time has been significantly impacted by Plaintiff's medical conditions. At the time the ALJ issued her opinion, no treating physician had opined as to Plaintiff's work-related restrictions. However, the ALJ recognized that Plaintiff did face some limitation in her ability to sit, and included a provision in Plaintiff's RFC to address that limitation. Specifically, the ALJ reasonably restricted Plaintiff to sitting for six hours at a time, with normal breaks.

Following the ALJ's decision, Plaintiff submitted a letter from her treating physician, Dr. Ziad Zawaideh, to the Appeals Council. Although this evidence was not presented to the ALJ, where the Appeals Council considers new evidence, but denies review, the court must determine whether the ALJ's decision was supported by substantial evidence, including the new evidence. *See Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). The letter, dated November 15, 2011, states, in part:

> This patient has multiple restrictions including inability to sit, stand or walk for long periods of time. The medications this patient is taking for the above conditions; may cause confusion, and memory loss. This patient is unable to

6

obtain or retain any type of employment.

(Tr. 684.)

The Court finds that the opinions rendered by Dr. Zawaideh in the November 15, 2011 letter do not undermine the ALJ's conclusions. The opinions contained in the letter are inconsistent with other treatment records and conclusory in nature. The letter does not explain how the stated conclusions were reached or even indicate the last time Plaintiff was examined by Dr. Zawaideh. Moreover, Dr. Zawaideh's treatment notes do not contain objective findings that support his opinion. Therefore, despite this new information provided to the Appeals Council, the ALJ's decision is still supported by substantial evidence.

## II.     Credibility

Plaintiff maintains that the ALJ did not properly assess the credibility of her subjective complaints of pain. A claimant's subjective complaints of pain "may be discounted if inconsistencies in the record as a whole bring those complaints into question." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (citation omitted).

> In assessing the credibility of a claimant's subjective pain complaints, an ALJ is to consider factors including the claimant's prior work record; the claimant's daily activities; observations of the claimant by third parties and treating and examining physicians; the duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors; the dosage, effectiveness, and side effects of the claimant's medication; treatment, other than medication, for relief of the claimant's pain; and functional restrictions on the claimant's activities.

*Id*. "Although an ALJ may not disregard a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Id*. (quotation and citation omitted).

In evaluating Plaintiff's credibility, the ALJ clearly articulated the inconsistencies upon which she relied in discrediting Plaintiff's complaints of pain. These inconsistencies

7

included, among other things, the objective medical evidence. As pointed out by the ALJ, when Plaintiff complained of knee pain in February, 2011, Dr. Connolly noted that Plaintiff's left knee was stable and the right knee was excellent with no pain on range of motion testing. (Tr. 18, 583.) Moreover, in November, 2009, Dr. Woodward noted that Plaintiff's complaints regarding back pain seemed out of proportion with objective testing results. (Tr. 321.) Following her back surgery in 2010, Dr. Woodward concluded that Plaintiff's gait, spinal alignment, straight leg raise, range of motion and motor function were normal. (Tr. 19, 465-66.) Dr. Woodward further found that Plaintiff was able to toe and heel walk bilaterally and do deep knee bends. (Tr. 19, 466.) Neither Dr. Connolly nor Dr. Woodward imposed restrictions on Plaintiff. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("As for [the claimant's] claims of persistent dizziness and blackout spells . . . no functional restrictions were placed on [his] activities, a fact that . . . is inconsistent with a claim of disability.")

The ALJ also considered Plaintiff's minimal medical treatment in evaluating her subjective complaints. The ALJ noted that none of Plaintiff's physicians performed a trigger point analysis or any type of work-up for her fibromyalgia. (Tr. 18, 243, 320, 402, 495.) Although Plaintiff took medication to manage pain, she had not seen a rheumatologist or sought specific medical treatment for fibromyalgia since February, 2010. With respect to her back pain, it appears that Plaintiff has not followed-up with surgery or physical therapy since October, 2010. *See Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if [the claimant's] pain was as severe as she alleges, [she] would have sought regular medical treatment.") Also, the ALJ noted that Plaintiff had not received any specialized psychiatric treatment or counseling at a mental health facility for a mood disorder, and that her depression has been controlled with anti-depressant drugs prescribed by Dr. Zawaideh. (Tr. 20.)

Plaintiff's work history also supports the ALJ's finding of no disability. Plaintiff testified that she was terminated from her job because her cash drawer did not balance, not because of a disabling medical condition. "Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

8

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to substantial evidence in the record supporting her decision to discount Plaintiff's allegations. As such, this Court defers to the ALJ's credibility finding.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

**DATED April 2, 2014.**

                                              BY THE COURT:

                                              S/ F.A. Gossett
                                              **United States Magistrate Judge**